FILED
DEC 13 2006
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 3:06CR-297-MHT-WC |
| ) | [18 U.S.C. § 1343 |
| LOYD FRANK LAWING, JR. ) | 26 U.S.C. § 7201 |
| ) | 15 U.S.C. § 645(c) |
| ) | 18 U.S.C. § 506(a)] |
| ) | |
| ) | INDICTMENT |
| ) | |

The Grand Jury charges:

## INTRODUCTION

At all times relevant to this Indictment:

1.  Defendant Loyd Lawing, Jr. is an alumnus of Auburn University. While attending Auburn, Lawing joined the social fraternity, Alpha Tau Omega ("the fraternity"). In or about 1996 or 1997, Lawing became the advisor for the fraternity's Auburn branch. Shortly thereafter, Lawing was appointed as the Secretary and Treasurer for the fraternity's Board of Trustees. As the fraternity's Treasurer, Lawing had control of and access to the fraternity's bank accounts. Lawing opened accounts on behalf of the fraternity with Auburn Bank on or about November 7, 1997, and November 10, 1998, and with Charter Bank on or about August 7, 2002. Lawing had authority rights on all of the fraternity's accounts.

2. In or about 1999, Lawing took a job at a small company, which would later be known as Bold Horizon Aerospace, Inc. ("Bold Horizon"). From in or about 2001 until in or about June, 2005, Lawing became a minority shareholder of Bold Horizon and functioned as the company's President and Chief Operating Officer. During this time of his employment with Bold Horizon, Lawing had responsibility for the firm's finances. He also had control of, access to, and responsibility for Bold Horizon's bank account at AmSouth Bank during this period.

3. In or about October, 2001, Bold Horizon applied to the Small Business Administration ("SBA") for a special "September 11th" loan, which was designed to assist companies affected by the disaster. On or about January 14, 2002, the SBA approved such a disaster loan for Bold Horizon in the amount $177,800. The loan was secured in part with two parcels of land–one owned by Lawing himself and the other owned jointly with his wife. The first parcel was a plot of land located at Lot 80, Asheton Park, 4th Add., Auburn, Alabama. The second parcel was located at 2478 Buck Head Road, Auburn, Alabama.

4. Because of shrinking membership and financial difficulties, in or about June, 2002, the Board of Trustees of Alpha Tau Omega's Auburn branch made a decision to deactivate the local fraternity and sell its real property. On or about July 19, 2002, the property sold for $1.4 million, which after payments of certain costs and debts netted the fraternity $978,353.65. The fraternity also received a $1,000 option-to-buy check from

the buyer at or around this time. Lawing himself deposited all proceeds from the sale into one of the fraternity's Auburn Bank accounts.

## COUNTS 1-5 – WIRE FRAUD

5.  In or about June 2002, and continuing until on or about July 13, 2005, however, the defendant,

**LOYD FRANK LAWING, JR.**

devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, which scheme and artifice is described below.

### Description of the Scheme

6.  As part of the scheme, Lawing, while functioning as the fraternity's treasurer, managed the sale of the fraternity's real property and all of its proceeds. Lawing received the following checks in relation to the fraternity's real estate transaction:

| Date | Check Purpose | Amount |
|---|---|---|
| July 9, 2002 | Consideration for the option to buy the fraternity's real property | $1,000.00 |
| July 12, 2002 | Earnest money towards the purchase of the fraternity's real property | $42,000.00 |
| July 19, 2002 | Closing proceeds from the sale of the fraternity's real property | $936,353.65 |

7.  During telephonic conferences with other board members leading up to the

sale, Lawing gave the false impression that the option-to-buy money and the earnest money had been given to a local attorney for safekeeping. In fact, Lawing took custody of these checks and deposited the proceeds into one of the fraternity's accounts. In addition, on or about July 19, 2006, Lawling deposited the $936,353.65 real estate proceeds check into one of the fraternity's accounts.

8.  Between in or about June 2002 through in or about March, 2005, Lawing embezzled nearly all of the money from the fraternity's accounts with Auburn and Charter Banks. Lawing diverted some of the funds to his personal accounts in order to pay for personal expenses, including a luxury SUV, as well as a $124,199.63 down payment for a new house. Lawing also diverted monies from the fraternity to Bold Horizon, in order to keep the company financially solvent. Oftentimes, as part of the scheme, Lawing would use several accounts in an attempt to conceal his embezzlement.

10. It was also part of the scheme that Lawling would accept donations from contributors on behalf of the fraternity. After Lawing received the donation, he would embezzle and convert, those funds too. For example, on or about January 12, 2003, Lawling received a $15,000 bequest from a donor. That check was drawn on an account from Charlotte, North Carolina. On or about January 27, 2003, Lawing deposited the North Carolina check into one of the fraternity's accounts. Lawing then used the money for personal expenses and to support Bold Horizon.

11. It was further part of the scheme that to prevent the scheme's detection and

collapse, Lawing devised and implemented a series of lulling tactics designed to conceal the fraternity's increasingly depleted funds. These tactics first included false assurances that the initial proceeds from the sale of the property had been prudently invested in a CD and a money market account. Later, Lawing falsely assured other members of the Board that a "nest egg" had been created in the form of a fraternity trust with the assistance of a local Auburn, Alabama attorney.

12.  On or about the following dates, in the Middle District of Alabama and elsewhere, for the purpose of executing the scheme and artifice described in paragraphs 6 through 11 above, and attempting to do so, the defendant,

**LOYD FRANK LAWING, JR.**

did knowingly and willfully transmit and cause to be transmitted by means of wire communications in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Item |
| --- | --- | --- |
| 1 | February 26, 2004 | An e-mail regarding the status of a fraternity construction payment from Lawing in Auburn, Alabama to a fraternity board member in Georgia. |
| 2 | October 29, 2004 | An e-mail regarding the real estate sale and the status of fraternity funds from Lawing in Auburn, Alabama to a fraternity board member in Montgomery, Alabama, who forwarded the message via e-mail to a fraternity alumnus in Tennessee. |

| Count | Date | Item |
|---|---|---|
| 3 | March 25, 2005 | A facsimile correspondence regarding status of fraternity funds from Lawing in Auburn, Alabama to a fraternity board member in Columbus, Georgia. |
| 4 | May 3, 2005 | A facsimile correspondence regarding status of fraternity funds from Lawing in Auburn, Alabama to a fraternity board member in Columbus, Georgia. |
| 5 | June 1, 2005 | A facsimile correspondence regarding status of fraternity funds from Lawing in Auburn, Alabama to a fraternity board member in Columbus, Georgia. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 6-7
## PERSONAL INCOME TAX EVASION

13. The allegations contained in paragraphs 1 through 12 of this Indictment are hereby realleged and incorporated herein by reference.

14. Lawing embezzled approximately $357,028.07 for the tax year 2002, and approximately $578,343.00 for the tax year 2003. He used these embezzled funds for personal purposes, including, among other purchases, a luxury home and SUV, and to fund Bold Horizon.

15. On or about April 15, 2003, Lawing caused to be filed with the Internal Revenue Service his and his wife's 2002 U.S. Individual Income Tax Return, Form 1040. In the 2002 return, Lawing reported that the couple's taxable income for the calendar year

2002 was $0 and that the amount of tax refund due and owing to the couple on this income was $961.

16.    The 2002 return, however, did not include the additional income of approximately $357,105.04, which included the funds Lawing embezzled that year and a small amount of interest and dividend income. Lawing's actual taxable income for 2002 was approximately $381,699.04, on which a total additional income tax of approximately $118,433.03 was due and owing to the United States.

17.    On or about April 18, 2005, Lawing caused to be filed with the Internal Revenue Service the couple's 2003 U.S. Individual Income Tax Return, Form 1040. In the 2003 return, Lawing reported that the couple's taxable income for the calendar year 2003 was $0 and that the amount of tax refund due and owing on this income was $462.

18.    The 2003 return, however, did not include the additional income of $578,373.41, which included the funds Lawing embezzled that year and a small amount of dividend income. Lawing's actual taxable income for 2003 was $598,905.41, on which a total additional income tax of $184,823.39 was due and owing to the United States.

19.    On or about the following dates, within the Middle District of Alabama and elsewhere, the defendant,

**LOYD FRANK LAWING, JR.**

knowingly and willfully did attempt to evade and defeat a substantial part of the income

tax due and owing to the United States because he filed with the Internal Revenue Service the following tax returns, knowing them to be false and fraudulent with respect to those matters as described in paragraphs 15 to 18 above:

| Count | Date of Filing | Defendant Reported Tax Due and Owing | Actual Tax Due and Owing |
|---|---|---|---|
| 6 | April 13, 2003 | ($961) Refund | $118,433.03 |
| 7 | April 1, 2005 | ($462) Refund | $184,823.39 |

All in violation of Title 26, United States Code, Section 7201.

## COUNTS 8-9
## FRAUDULENT CONVERSION OF SBA PROPERTY

20.     The allegations contained in paragraphs 1 through 19 of this Indictment are hereby realleged and incorporated herein by reference.

21.     In order to obtain funds to deal with his worsening financial situation, from on or about October 22, 2004, until on or about November 10, 2004, Lawing unsuccessfully attempted to obtain from the Small Business Administration a release of the liens that it held on two parcels of land—one owned by Lawing himself and the other owned jointly with his wife.

22.     As a result, from on or about January 14, 2005 until on or about February, 2, 2005, Lawing created four documents, which purported to be SBA releases of liens on these parcels of land. In fact, these documents were fraudulent. The SBA had not released its liens on Lawing's properties.

23.    Lawing presented these fraudulent documents before or at the real estate closings for these two parcels of land. The closings took place in Auburn, Alabama. As a result, Lawing was able to receive proceeds from the sale of these parcels that he was not entitled to and that should have been paid to the SBA.

24.    On or about the following dates, in the Middle District of Alabama and elsewhere, the defendant,

**LOYD FRANK LAWING, JR.,**

with intent to defraud, did knowingly conceal, remove, dispose of, and convert to his use and to that of any another, the following property mortgaged and pledged to, and held by, the Small Business Administration in excess of $100 as further described below:

| Count | Date | Description of the Property Mortgaged to the SBA | Value of SBA Mortgage |
|---|---|---|---|
| 8 | January 28, 2005 | 2478 Buck Head Road, Auburn, Alabama | $47,254.65 |
| 9 | February 2, 2005 | Lot 80, Asheton Park, 4th Add., Auburn, Alabama | $45,271.37 |

All in violation of Title 15, United States Code, Section 645(c).

## COUNTS 10-11
### FORGERY OF A GOVERNMENT SEAL

25.    The allegations contained in paragraphs 1 through 24 of this Indictment are hereby realleged and incorporated herein by reference.

26.    From on or about January 14, 2005 until on or about February 2, 2005,

Lawing created two documents, each which purported to contain the SBA's 50th Anniversary Seal on them. In fact, the SBA seals on these documents were forgeries. Lawing then successfully used these documents at the two real estate closings described in paragraphs 21 through 23 above.

27.   On or about the following dates within the Middle District of Alabama and elsewhere, the defendant,

**LOYD FRANK LAWING, JR.,**

did falsely make, forge, and counterfeit the seal of the Small Business Administration and facsimile thereof and did knowingly use, affix, and impress this fraudulently made, forged, counterfeited, and altered seal and any facsimile thereof to and upon a certificate, instruction, instrument, document and paper as further described below:

| Count | Date | Seal | Description of Document |
|---|---|---|---|
| 10 | January 28, 2005 | SBA 50th Anniversary Seal | Release of SBA Lien |
| 11 | February 2, 2005 | SBA 50th Anniversary Seal | Release of SBA Lien |

All in violation of Title 18, United States Code, Sections 506(a)(1) and 506(a)(2).

A TRUE BILL

_____
Foreperson

_____
LEURA G. CANARY
United States Attorney

_____
CHRISTOPHER A. SNYDER
Assistant United States Attorney