IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 3:06-cr-00297-MHT-WC |
| | ) |
| LOYD FRANK LAWING, JR. | ) |

**PLEA AGREEMENT**

DEFENSE COUNSEL:           DONNIE WAYNE BETHEL

ASSISTANT U.S. ATTORNEY:   CHRISTOPHER A. SNYDER

**COUNTS AND STATUTES CHARGED**

| | | |
|---|---|---|
| Counts 1-5: | 18 U.S.C. § 1343 | (Wire Fraud) |
| Counts 6-7 | 26 U.S.C. § 7201 | (Personal Income Tax Evasion) |
| Counts 8-9 | 15 U.S.C. § 645(c) | (Fraudulent Conversion of SBA Property) |
| Counts 10-11 | 18 U.S.C. § 506 | (Forgery of a Government Seal) |

**COUNTS PLEADING PURSUANT TO PLEA AGREEMENT:**

| | | |
|---|---|---|
| Count 1: | 18 U.S.C. § 1343 | (Wire Fraud) |
| Count 7: | 26 U.S.C. § 7201 | (Personal Income Tax Evasion) |
| Count 8: | 15 U.S.C. § 645(c) | (Fraudulent Conversion of SBA Property) |

**PENALTIES BY COUNT – MAXIMUM PENALTY:**

Count 1:    18 U.S.C. § 1343    (Wire Fraud)

A term of imprisonment of not more than twenty years, and a fine of not more than $250,000, or both; a term of supervised release of not more than three years; an assessment fee of $100; and an order of restitution.

Count 7:    26 U.S.C. § 7201    (Personal Income Tax Evasion)

A term of imprisonment of not more than five years, and a fine of not more than $100,000 plus the costs of the prosecution, or both; a term of supervised release of not more than three years; an assessment fee of $100; and an order of restitution.

Count 8:        15 U.S.C. § 645(c)    (Fraudulent Conversion of SBA Property)

A term of imprisonment of not more than five years, and a fine of not more than $5,000, or both; a term of supervised release of not more than three years; an assessment fee of $100; and an order of restitution.

## **ELEMENTS OF THE OFFENSE**

Count 1:        18 U.S.C. § 1343    (Wire Fraud)

1. The Defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises;

2. That the false or fraudulent pretenses, representations or promises related to a material fact;

3. The Defendant acted willfully with an intent to defraud; and

4. That the Defendant transmitted or caused to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme to defraud.

Count 7:        26 U.S.C. § 7201    (Personal Income Tax Evasion)

1. That the Defendant owed substantial income tax in addition to that declared in his tax return; and

2. The Defendant knowingly and willfully attempted to evade or defeat such tax.

Count 8:        15 U.S.C. § 645(c)    (Fraudulent Conversion of SBA Property)

1. The Defendant knowingly concealed, removed, disposed of, or converted to his use or to that of another any property mortgaged or pledged to, or held by, the Small Business Administration;

2. The value of the property had a value in excess of $100; and

3. The Defendant did so with intent to defraud the Small Business Administration of property so concealed, removed, disposed of, or converted.

*****************************************************************

Christopher A. Snyder, Assistant United States Attorney, and Donnie Wayne Bethel, attorney for the defendant, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended, have, with the authorization of the undersigned defendant, entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the Indictment in this case and a Plea Agreement has been reached by said parties. The plea is being submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(C), and the parties understand that, if the terms of the Plea Agreement are not accepted by the Court, the defendant will be allowed to withdraw the defendant's plea of guilty and proceed to trial. If the Court accepts this agreement, however, and defendant thereafter breaches this agreement, his guilty plea may not be withdrawn.

## GOVERNMENT'S PROVISIONS

1. For purposes of the calculation of defendant's offense level under the United States Sentencing Guidelines, the government agrees that:

    a. A 2-level decrease for acceptance of responsibility is applicable, see U.S.S.G. § 3E1.1(a), so long as, between the date of this agreement and the date of sentencing, defendant does not obstruct justice, commit any new federal or state offenses, or otherwise fail to accept responsibility for the offense conduct.

    c. The government will move for an additional 1-level decrease based on defendant's timely notification of his intent to plead guilty, see U.S.S.G. § 3E1.1(b), if that decrease is applicable to defendant's sentence and so long as, between the date of this agreement and the date of sentencing, defendant does not obstruct justice, commit any new federal or state offenses, or otherwise fail to accept responsibility for the offense conduct.

    c. The defendant will not file a motion for downward departure or argue for a downward departure, and the government will not file a motion for upward departure or argue for an upward departure.

      d.      Neither the defendant, nor the government will request or argue for a variance of the sentence imposed pursuant to the factors enumerated in 18 U.S.C. § 3553, as would otherwise been permitted under *United States v. Booker*.

2. The government agrees, with the defendant, that the amount of restitution shall be at a minimum: $935,364.87 ($940,064.87 embezzled minus a $4,700.00 repayment) to the Alpha Epsilon Chapter of the Alpha Tau Omega Fraternity, $302,918.42 to the Internal Revenue Service, and $97,553.59 to the Small Business Administration for a total restitution of $1,335,836.88. In addition, the defendant agrees to pay any restitution as calculated by the Probation Officer, which is either (1) calculated in a higher amount or (2) includes additional restitution to other victims.

3. The government agrees, with the defendant, to term of imprisonment equal to the bottom of the applicable Guideline Range as calculated by the Court.

4. The Government will move to dismiss Counts 2, 3, 4, 5, 6, 9, 10, and 11 against the defendant at sentencing.

5. The United States reserves the right to inform the Court and the Probation Department of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## **DEFENDANT'S PROVISIONS**

1. The defendant agrees to plead guilty to Counts 1, 7, and 8 of the Indictment.

2. The defendant agrees with the calculation of the offense level, the restitution calculation, and the sentence as set forth in paragraphs 1, 2, 3, and 4 of the government's provisions.

3. The defendant further agrees to the following:

   a. To forfeit any and all firearms in his possession.

   b. To not commit state, federal, or local crimes.

   c. To waive appeal and collateral attack as detailed below.

4. The defendant understands that the while the United States Sentencing Guidelines are advisory, the defendant agrees to be sentenced in accordance with the Guidelines.

5. The defendant agrees (1) that facts used to determine the defendant's Guideline offense level and sentence will be found by the Court by a preponderance of the evidence and (2) that the Court may consider any reliable evidence, including hearsay.

## FACTUAL BASIS

The defendant admits the allegations charged in Counts 1, 7, and 8 of the Indictment and understands that the nature of the charge to which the plea is offered involves the following proof as to these Counts:

A. **Count 1: Wire Fraud**

1. The Defendant Loyd Frank Lawing, Jr. devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, which scheme and artifice is described below.

2. In or about 1996 or 1997, Lawing became a member of the Board of Trustees for the Auburn branch of the social fraternity, Alpha Tau Omega. Shortly thereafter, Lawing was appointed as the Secretary and Treasurer for the fraternity's Board of Trustees. As the fraternity's Treasurer, Lawing had control of and access to the fraternity's bank accounts in Auburn, Alabama.

3. On or about July 19, 2002, the fraternity sold a property for $1.4 million, which after payments of certain costs and debts netted the fraternity $978,353.65. The fraternity also received a $1,000 option-to-buy check from the buyer at or around this time. Lawing deposited all proceeds from the sale into one of the fraternity's Auburn Bank accounts.

4. As part of the scheme, Lawing, while functioning as the fraternity's treasurer, managed the sale of the fraternity's real property and all of its proceeds. Between in or about June 2002 through in or about March, 2005, Lawing embezzled nearly all of the money from the fraternity's accounts with Auburn and Charter Banks. Lawing diverted some of the funds to his personal accounts in order to pay for personal expenses, including a luxury SUV, as well as a $124,199.63 down payment for a new house. Lawing also diverted monies from the fraternity to a company he was an officer for – Bold Horizon Aerospace, Inc. – in order to keep the company financially solvent.

5. It was also part of the scheme that Lawing would accept donations from contributors on behalf of the fraternity. After Lawing received the donation, he would embezzle and convert, those funds too.

6. In total, Lawing embezzled $940,063.87. It was further part of the scheme that to prevent the scheme's detection and collapse, Lawing devised and implemented a series of lulling tactics designed to conceal the fraternity's increasingly depleted funds. These tactics first included false assurances that the initial proceeds from the sale of the property had been prudently invested in a CD and a money market account. Later, Lawing falsely assured other members of the Board that a "nest egg" had been created in the form of a fraternity trust with the assistance of a local Auburn, Alabama attorney.

7. In order to further the purpose of executing the scheme and artifice described in paragraphs 2 through 6 above, on February 26, 2004, Lawing knowingly and willfully transmited and caused to be transmitted by means of wire communications in interstate commerce, an e-mail which falsely represented the status of a fraternity construction payment. Lawing sent the e-mail from Auburn, Alabama to a fraternity board member in Georgia.

**B.    Count 7:    Personal Income Tax Evasion**

8. Lawing embezzled approximately $357,028.07 for the tax year 2002, and approximately $578,343.00 for the tax year 2003.

9. On or about April 18, 2005, Lawing caused to be filed with the Internal Revenue Service his and his wife's 2003 U.S. Individual Income Tax Return, Form 1040 from the Middle District. In the 2003 return, Lawing reported that the couple's taxable income for the calendar year 2003 was $0 and that the amount of tax refund due and owing on this income was $462.

10. The 2003 return, however, did not include the additional income of $578,373.41, which included the funds Lawing embezzled that year and a small amount of dividend income. Lawing's actual taxable income for 2003 was $598,905.41, on which a total additional income tax of $184,823.39 was due and owing to the United States. Lawing knew he under-represented this income and his income tax return was therefore false. Lawing also knew that his failure to declare this income was a willful attempt to evade and defeat a substantial part of the income tax due and owing to the United States.

**C.    Count 8:    Fraudulent Conversion of SBA Property**

11. In or about 1999, Lawing took a job at a small company, which would later be known as Bold Horizon Aerospace, Inc. ("Bold Horizon"). From in or about 2001 until in or

about June, 2005, Lawing became a minority shareholder of Bold Horizon and functioned as the company's President and Chief Operating Officer. During this time of his employment with Bold Horizon, Lawing had responsibility for the firm's finances.

12. In order to obtain funds to deal with his worsening financial situation, from on or about October 22, 2004, until on or about November 10, 2004, Lawing unsuccessfully attempted to obtain from the Small Business Administration a release of the lien that it held on a parcel of land of his property at 2478 Buck Head Road in Auburn, Alabama.

13. As a result, from on or about January 14, 2005 until on or about February, 2, 2005, Lawing created false documents, which purported to be SBA releases of liens on the Buck Head Road property. In fact, these documents were fraudulent. The SBA had not released its liens on Lawing's properties.

14. Lawing presented these fraudulent documents before or at the real estate closing for the Buck Head Road property. The closing took place in Auburn, Alabama. As a result, Lawing was able to receive $47,254.65 in proceeds from the sale of the Buck Head Road property that he was not entitled to and that should have been paid to the SBA.

## DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. Defendant specifically waives the right to appeal the sentence on the grounds that the sentencing guidelines are in any respect unconstitutional, or that any fact found by the Court for sentencing was not alleged in the Indictment, admitted by the Defendant, found by a jury, or found beyond a reasonable doubt. Defendant further expressly

waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel and prosecutorial misconduct, or to collaterally attack the sentence imposed on those grounds. But, other than those grounds, the defendant expressly waives the right to appeal or collaterally attack his conviction or sentence on any other ground.

Notwithstanding the above, the defendant reserves the right to file a direct appeal of an upward departure from the applicable Guidelines range which the sentencing court specifies at the time of sentencing as having been imposed pursuant to either U.S.S.G. § 4A1.3 (from criminal history category) or § 5K2.O (from offense level). The defendant understands and agrees that this waiver as to all other Guidelines findings would still be in force and effect notwithstanding the appealability of an upward departure. Defendant knowingly and voluntarily waives any rights defendant has under federal law to a jury determination of any fact affecting Defendant's sentence.

In return for the above waiver by the defendant, the Government does not waive its right to appeal the sentence imposed in the instant case. The Government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver as to any issue the defendant may raise pursuant to 18 U.S.C. § 3742(a).

## **DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT**

1.  The defendant, before entering a plea of guilty to Counts 1, 7, and 8 of the Indictment as provided for herein by said Plea Agreement, advises the Court that:

    a.  The discussions between the attorney for the government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

    b.  Other than as provided for under Rule 11(c)(1)(C), *Federal Rules of Criminal Procedure*, the Defendant acknowledges that a breach of this Plea Agreement will not entitle him to withdraw his guilty plea in this case. Defendant understands and acknowledges that defendant's guilty plea will remain in full force and effect upon any breach of this agreement by the defendant.

    c.  The defendant further understands that, pursuant to Title 18, United States Code, Section 3013, said $100.00 assessment fee is to be paid by the defendant on the date of sentencing. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing and submitting to the court or the government any financial statements, the defendant is representing that the statement is true and accurate to the best of the defendant's information, knowledge, and belief.

    d.  The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

  e. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

  f. The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

  g. The defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the government, and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

  h. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

-11-

  i. The defendant further advises the Court that it is understood that the government can only make a recommendation which is not binding on the respective Court.

  j. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crimes charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

  k. The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

  2. The undersigned attorney for the government and for the defendant represent to the Court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11, Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the

defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

3. The defendant understands that the United States Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. The offense level or criminal history category, as calculated by the Probation Officer and determined by the Court, may differ from that projected by defendant's counsel or the United States Attorney.

This **6TH** day of August, 2007.

> Respectfully submitted,
> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> Christopher A. Snyder
> Assistant United States Attorney
> One Court Square
> Suite 201
> Montgomery, Alabama 36104
>
> Louis V. Franklin
> Chief, Criminal Division

-13-

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL, <u>Donnie Wayne Bethel</u>

_____
Loyd Frank Lawing, Jr.
Defendant

6 AUG 07
Date

_____
Donnie Wayne Bethel
Attorney for the Defendant

6 Aug 07
Date